**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| JAMES A. WYNNE,<br>*Plaintiff*<br><br>v.<br><br>BALTIMORE POLICE DEPARTMENT; RICHARD WORLEY; and BRIAN NADEAU,<br>*Defendants.* | C.A. No: ________________________<br><br>(Jury Trial Demanded) |

**COMPLAINT**

Plaintiff James A. Wynne, by and through undersigned counsel, brings this Complaint against the Baltimore Police Department and the individual named defendants, and alleges as follows:

**INTRODUCTION**

1. This is an action for money damages, declaratory relief, and injunctive relief brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, together with related claims under Article 24 of the Maryland Declaration of Rights and the Maryland Police Accountability Act, Md. Code Ann., Pub. Safety § 3-101 et seq. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and on this Court's supplemental jurisdiction over claims arising under state law.

2. This case concerns a police officer held in indefinite limbo. The Baltimore Police Department ("BPD") suspended Police Officer James A. Wynne's police powers in October 2022 and, after he requested an administrative trial board in October 2023, never

held one. More than 1,450 days have since passed — more than 1,077 of them after he requested the trial board. Throughout that period BPD has kept Officer Wynne suspended, barred him from promotions and specialized assignments, and — while his case sat unadjudicated — caused him to be branded publicly as untrustworthy on a State's Attorney's "Do Not Call" list, where he has now remained for more than a year, all without ever affording him the hearing at which he could answer the charges against him and clear his name.

3. The Maryland Police Accountability Act guarantees an officer who declines proposed discipline a trial board, and it sets firm deadlines for the disciplinary process. BPD honored neither. It missed the statutory deadline to complete its investigation, then left Officer Wynne's requested hearing unscheduled for years, converting a temporary suspension into an open-ended punishment imposed without any adjudication of the charges.

4. The consequences for Officer Wynne have been severe and continuing: the loss of specialized-unit pay and overtime, the loss of promotional and career opportunities, public stigmatization as a dishonest officer, and the foreclosure of his ability to work in law enforcement — all imposed without the fair and timely process that the United States Constitution and the Maryland Declaration of Rights require. This action seeks redress for those violations.

5. Officer Wynne's treatment is not an aberration. It reflects a documented and longstanding BPD custom of failing to adjudicate officer-discipline cases in a timely manner — a custom that has left a backlog of many hundreds of officers awaiting trial boards, that the

federal court overseeing BPD's 2017 Consent Decree has condemned as unacceptable, and that BPD's leadership has perpetuated through deliberate indifference.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, because they arise under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a), because they seek redress for the deprivation, under color of state law, of rights secured by the Constitution and by 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over Plaintiff's claims arising under the Maryland Declaration of Rights and the Maryland Police Accountability Act pursuant to 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy as the federal claims.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Baltimore, Maryland, and under § 1391(b)(1), because all Defendants reside in Maryland and the Baltimore Police Department is headquartered and conducts its operations in Baltimore City.

9. Plaintiff has satisfied, or is excused from, the notice requirements of the Maryland Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-301 et seq., having served a Notice of Claim on the Baltimore City Solicitor. Because Defendants' failure to provide a trial board is a continuing wrong that renews each day the hearing is withheld, because BPD has possessed actual notice of Officer Wynne's case and all relevant records since 2022, and because Defendants cannot show prejudice from the timing of notice,

good cause exists for any late notice under § 5-304(d), and notice is in any event excused under § 5-304(e).

## PARTIES

10. Plaintiff James A. Wynne is an adult citizen of the State of Maryland and resides in Bel Air, Maryland. He was sworn as a member of the Baltimore Police Department on or about June 20, 2007, holds sequence number I243, and at all relevant times has served as a BPD police officer, currently assigned to the Education and Training Section. He remains employed by BPD in a suspended status pending an administrative trial board he requested in October 2023.

11. Defendant Baltimore Police Department ("BPD") is a municipal police agency and an instrumentality of the City of Baltimore, organized under the laws of the State of Maryland. Courts have recognized that BPD is a "person" subject to suit under 42 U.S.C. § 1983 for constitutional violations caused by its officers or by its policies, customs, and practices. BPD is responsible for establishing, implementing, and enforcing the policies governing the investigation and discipline of officer misconduct, including through its Public Integrity Bureau ("PIB"), and for adjudicating officer discipline through trial boards. At all relevant times BPD and its agents acted under color of state law.

12. Defendant Richard Worley is, and at all relevant times has been, the Police Commissioner of the Baltimore Police Department. As Commissioner, Defendant Worley is the final policymaker for BPD and for the City with respect to the discipline of officers and the conduct and scheduling of disciplinary proceedings, including trial boards. At all relevant times he acted under color of state law.

13. Defendant Brian Nadeau was, at all relevant times, a Deputy Commissioner of the Baltimore Police Department responsible for oversight of the Public Integrity Bureau and the disciplinary process. Under BPD policy, the Deputy Commissioner over PIB, or his designee, makes the final determination as to investigative findings and the conduct of the disciplinary process, and Defendant Nadeau is therefore a final policymaker for BPD with respect to internal misconduct investigations and discipline. At all relevant times he acted under color of state law.

**FACTUAL ALLEGATIONS**

14. The Baltimore Police Department has a long and documented history of corruption, mismanagement, and unconstitutional practices.

15. On April 7, 2017, BPD, the Mayor and City Council of Baltimore, and the United States Department of Justice entered into a Consent Decree to address a pattern and practice of unconstitutional policing. Central to the mandated reforms was the premise that BPD must police itself through thorough, transparent, fair, and timely internal investigations and disciplinary proceedings, free of conflicts of interest.

16. To implement those reforms, BPD's Public Integrity Bureau adopted an Internal Operations and Training Manual (the "PIB Manual"). The PIB Manual requires that investigations be conducted thoroughly and completed timely, that all reasonable investigative leads be pursued, that investigative calls and interviews be recorded and memorialized, and that, although a second detective may be present, the questioning of an accused officer be conducted by a single primary investigator.

17. In 2021, the Maryland General Assembly enacted the Maryland Police Accountability Act, Md. Code Ann., Pub. Safety § 3-101 et seq., which replaced the former Law Enforcement Officers' Bill of Rights and established a uniform statewide disciplinary process. The Act created administrative charging committees to review investigations and determine charges, guaranteed officers a trial board to adjudicate discipline they decline to accept, and imposed firm deadlines designed to ensure that disciplinary matters are resolved promptly.

18. Notwithstanding the Consent Decree and the Police Accountability Act, BPD has maintained a custom and practice of failing to adjudicate officer-discipline cases within the time the law requires or within any reasonable time. BPD conducts only a handful of trial boards each year — on the order of a dozen or fewer — while a backlog of many hundreds of officers awaits hearings — including, on information and belief, more than 800 body-worn-camera cases alone, apart from other disciplinary matters — leaving accused officers suspended and in professional limbo for years.

19. The federal court overseeing the Consent Decree has repeatedly criticized the pace of BPD's disciplinary process, observing that in this context justice delayed is justice denied, and has demanded changes that BPD has failed to implement.

20. The federal monitoring team and civilian oversight bodies have likewise documented BPD's persistent failure to complete misconduct investigations within the required time. Monitors have reported that PIB routinely delivers completed investigative files to the Administrative Charging Committee on the eve of the statutory deadline, depriving the committee of the time the law allots for meaningful review, and that the resulting untimeliness compromises the reliability of the process.

21. On information and belief, Defendant Nadeau, who oversees the disciplinary process, has instructed members of trial board panels that they must return guilty findings and charge officers at the highest available offense, reflecting a disciplinary apparatus oriented toward predetermined outcomes rather than fair adjudication.

22. The indefinite delay inflicted on Officer Wynne, described below, is a direct manifestation of that custom.

23. Officer Wynne joined BPD in 2007 and built a distinguished record. He served on the Marine Unit and Underwater Recovery (Dive) Team, was selected for and assigned to the Education and Training Section, and, shortly before his suspension, had been selected for the Department's Hazardous Device Team.

24. Separate and apart from his BPD duties, Wynne was certified as a private firearms instructor and taught Maryland Wear and Carry (concealed-carry) classes as a private citizen. On October 3, 2022, the Maryland State Police contacted BPD's Public Integrity Bureau by telephone regarding a complaint about the way Wynne conducted those private classes.

25. That same day, the Maryland State Police suspended Wynne's instructor certification pending an administrative review, which caused the concealed-carry permits of his former students to be suspended as well. The State Police later imposed a one-year administrative suspension of his instructor certification. No criminal charges were ever filed against Wynne by any law-enforcement agency.

26. On October 4, 2022 — one day after the complaint was received — BPD suspended Officer Wynne's police powers, with pay, pending investigation. Officer Wynne was given no explanation beyond that his police powers were suspended until further notice.

27. On October 13, 2022, Officer Wynne was directed not to teach at the academy. He was required to sit idle, without his instructional duties, for nearly a year, until a staffing shortage led the Department to return him to teaching — the very role that had been the subject of the complaint.

28. For 245 days after his suspension, Officer Wynne received no notice of the nature or status of the investigation. Not until June 5, 2023 did BPD email him a Notice of Investigation. During the investigation, PIB contacted Officer Wynne's former private students and, from among the many it interviewed, handpicked thirteen to serve as complainants and alleged victims.

29. While the investigation languished, rumors spread through the Department and the community that Officer Wynne had been arrested, that federal authorities had raided his home and seized his firearms, and that he faced criminal charges. None of that was true, but BPD allowed the rumors to circulate, damaging his reputation.

30. On June 7, 2023, Officer Wynne gave his first statement to PIB. Contrary to the PIB Manual's requirement that only a single primary investigator conduct the questioning, both detectives — Syreeta Harvin and Haley Nehms — actively questioned him.

31. On August 11, 2023, he was required to give a second statement, this time questioned by two additional detectives, including Detective William Nave, bringing the total to four.

Officer Wynne was compelled to answer questions even though investigators acknowledged the State Police matter was criminal in nature.

32. On September 29, 2023, the Administrative Charging Committee met and, in a closed session lasting roughly one hour and forty-three minutes, purported to review the entire investigative file — including two recorded statements, thirteen complainant statements, and the investigative summary. The Committee signed its charges on October 2, 2023, and BPD emailed Officer Wynne the findings on October 6, 2023.

33. The Administrative Charging Committee charged Officer Wynne with conduct unbecoming for the unauthorized use of departmental property, unauthorized secondary employment, failure to comply with handgun-permit training requirements under COMAR, theft from thirteen individuals in violation of Md. Code Ann., Crim. Law § 7-104, and making false statements. The Committee recommended termination as the only discipline, offering Officer Wynne no lesser alternative.

34. The Administrative Charging Committee's charging document bore multiple irregularities that further undermine the reliability of the process. Officer Wynne's name was misspelled repeatedly; the digital signature on the document did not match the name reflected in the Committee's minutes; and although the minutes state that the Committee met on September 29, 2023, the charging document was not signed until October 2, 2023. The theft allegations were internally inconsistent, including as to the amounts allegedly taken and the specific statutory theft offense charged.

35. BPD's investigation breached the deadlines the Police Accountability Act imposes. The investigation did not reach the Administrative Charging Committee until day 361 —

beyond the 334-day limit set by Md. Code Ann., Pub. Safety § 3-113 — and the Committee was given fewer than five days to review the file rather than the thirty days the statute allows. BPD also failed to meet the Consent Decree's 120-day target for completing such matters.

36. On October 12, 2023, Officer Wynne declined the proposed discipline and requested a trial board, as the Police Accountability Act entitles him to do. He has never requested that the trial board be postponed, and his counsel has never sought a postponement on his behalf.

37. More than 1,077 days have passed since Officer Wynne requested a trial board, and he has now been suspended for more than 1,450 days. BPD has never convened a trial board, never adjudicated the charges, and never given Officer Wynne an opportunity to answer them. His repeated inquiries — to the Department, his union, and his counsel — have been met only with statements that the Department is backlogged, that it is not ready, and that his case is not on the schedule.

38. Throughout this period, BPD has continued to assign Officer Wynne to teach at the academy — the very instructional role underlying the complaint against him — confirming that the Department perceives no genuine danger in his continued service and that its prolonged suspension and delay serve no legitimate investigative purpose.

39. The Department's insistence on Officer Wynne's continued suspension, and its recommendation that he be terminated, stand in stark contrast to its treatment of other officers. On information and belief, BPD has retained — and in some instances promoted or assigned to preferred positions — officers who have been criminally charged or

convicted, including for crimes of violence, even as it has kept Officer Wynne suspended for years on allegations that have never been adjudicated.

40. On July 10, 2025 — more than 1,000 days after the complaint and while his requested trial board remained unscheduled — the Baltimore City State's Attorney's Office placed Officer Wynne on its "Do Not Call" list. BPD's Public Integrity Division notified him of the placement by email. The placement rested entirely on unadjudicated allegations: Officer Wynne had no sustained disciplinary finding, no criminal charge, and no criminal conviction. He has remained on the list ever since — now more than a year.

41. The "Do Not Call" list is published on the internet and is accessible worldwide. It is used to identify officers whose credibility is so compromised that prosecutors will not call them as witnesses, and it groups listed officers with the disgraced members of the Gun Trace Task Force. BPD is the only law-enforcement agency in Maryland that publicly posts such a list. The list, including Officer Wynne's name, has been republished in the news media and circulated on social media, accompanied by public calls for the termination of the officers named on it. Placement on it brands Officer Wynne as dishonest and untrustworthy and forecloses his ability to obtain employment with any law-enforcement agency.

42. Had BPD convened Officer Wynne's trial board within the time the law requires — or within any reasonable time — he would have had the opportunity to answer the charges and clear his name before being publicly branded. BPD's delay deprived him of that opportunity.

43. BPD's delay has cost Officer Wynne substantial income and career opportunities. He was removed from the Underwater Recovery Team and lost the operational call-in pay associated with it. He was passed over for the Hazardous Device Team in 2022 and was denied the opportunity to interview for it again in May 2025 and April 2026, in each instance solely because of his suspended status. He has lost specialized-unit pay, overtime, and the use of a take-home vehicle. He also lost access to specialized training and instructor certifications available only through his assignments, including active-shooter-response instructor training through FEMA and Louisiana State University, and defense-tactics, EVOC, expandable-baton, and firearms-instructor certifications, along with CBRNE training offered through the Maryland State Police and other training available only to members of the Hazardous Device Team. Although he had passed the firearms-instructor pre-qualification, his suspension barred him from attending the instructor school, and he was again denied that opportunity in 2026. The Hazardous Device Team has since been converted from a call-in unit to a full-time assignment, further compounding his lost career progression.

44. Because his suspended status bars him from promotional testing, Officer Wynne has been excluded from the 2023, 2024, and 2025–2026 promotional cycles. He has suffered a permanent loss of time-in-grade seniority, which diminishes his future promotional eligibility and reduces his retirement and pension benefits.

45. Officer Wynne has endured severe and lasting reputational harm and a continuing cloud of suspicion, including scrutiny each time he performs his duties at the academy.

46. The prolonged limbo has caused Officer Wynne severe and pervasive anxiety, emotional exhaustion, and somatic symptoms including headaches, digestive problems, and fatigue,

and has required him to resume antidepressant and anti-anxiety medication, which has required ongoing adjustment.

47. Defendants' failure to provide a trial board is a continuing wrong. Each day that BPD withholds the hearing renews and compounds Officer Wynne's injuries.

48. BPD possesses, and has at all times possessed, every record relevant to Officer Wynne's case, including its complete investigative file. Defendants can demonstrate no prejudice from the timing of any notice of claim, and they have had actual notice of Officer Wynne's case since 2022.

49. At no point has BPD afforded Officer Wynne a meaningful opportunity to be heard or to clear his name. It has neither adjudicated the charges nor lifted the suspension, even as it has allowed the stigma of those charges to harden into public, career damaging consequences.

50. As a direct and proximate result of Defendants' conduct, Officer Wynne has suffered and continues to suffer the loss of career and promotional opportunities, lost wages and benefits, severe and lasting reputational harm, and severe emotional and physical distress.

**COUNT I: Procedural Due Process — Deprivation of Liberty Without a Name-Clearing Hearing (Stigma-Plus) — 42 U.S.C. § 1983 (Individual Defendants)**

51. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

52. The Fourteenth Amendment protects a public employee's liberty interest in his good name and in his freedom to pursue his chosen occupation. Where a government employer makes public a stigmatizing charge that implies a serious character defect such as dishonesty, in conjunction with the employee's termination or a comparable alteration of

his employment status, and the charge is false, the employee is entitled to due process, including a name-clearing hearing. A plaintiff states such a claim by alleging that the charge (1) placed a stigma on his reputation implying a serious character defect such as dishonesty, (2) was made public by the employer, (3) was made in conjunction with his termination or a like change in status, and (4) was false.

53. A charge that a police officer is dishonest or untrustworthy implies a serious character defect and is stigmatizing in a constitutionally cognizable sense. Such a deprivation is actionable where it restricts or impairs the officer's future employment opportunities; it need not foreclose all future employment, and it remains actionable even though the officer is not formally terminated. Officer Wynne affirmatively alleges that the charges branding him untrustworthy are false.

54. Defendants Worley, and Nadeau, acting under color of state law, placed and allowed to be placed upon Officer Wynne a public, stigmatizing brand of dishonesty — including but not limited to his placement on the State's Attorney's publicly accessible "Do Not Call" list while his charges remained unadjudicated — in conjunction with his continued suspension and the foreclosure of his law-enforcement career, and those charges are false.

55. Officer Wynne was afforded no meaningful opportunity to clear his name. By withholding the trial board for more than 1,077 days, Defendants ensured that the stigmatizing charges would be publicly disseminated and his reputation ruined before any hearing. An opportunity to clear one's name after it has been ruined by the dissemination of false, stigmatizing charges is not meaningful, and a name-clearing hearing must be granted at a meaningful time.

56. As a direct and proximate result, Officer Wynne suffered the injuries described above. The individual Defendants' conduct was willful, malicious, and in reckless disregard of Officer Wynne's rights, warranting punitive damages against the individual Defendants.

**COUNT II: Procedural Due Process — Failure to Provide a Hearing at a Meaningful Time (Unreasonable Delay) — 42 U.S.C. § 1983 (Individual Defendants)**

57. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

58. The Due Process Clause of the Fourteenth Amendment requires that a deprivation of a protected interest be accompanied by a hearing at a meaningful time, and at some point an unjustified delay in providing a post-deprivation hearing itself becomes a constitutional violation. Prompt post-deprivation process is especially important where no adequate rederivation hearing was afforded.

59. Whether delay is constitutionally excessive is determined by balancing the importance of the private interest and the harm caused by the delay, the government's justification for the delay, and the likelihood that the interim deprivation is mistaken. Officer Wynne's interest in his livelihood, career, and reputation is substantial; the harm caused by the delay has been continuous and severe; and BPD has offered no justification beyond its own backlog.

60. Defendants Worley and Nadeau, acting under color of state law, deprived Officer Wynne of a hearing at a meaningful time by suspending him and then withholding the trial board he requested for more than 1,077 days, converting a temporary suspension into an open-

ended deprivation imposed without any adjudication. A backlog of the government's own making does not justify so prolonged a delay.

61. As a direct and proximate result, Officer Wynne suffered the injuries described above.

**COUNT III: Procedural Due Process — Deprivation of Property Interest — 42 U.S.C. § 1983 (Individual Defendants)**

62. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

63. A public employee who may be discharged only for cause has a constitutionally protected property interest in his continued employment, of which he may not be deprived without due process; before such a deprivation he is entitled to notice of the charges, an explanation of the employer's evidence, and an opportunity to respond, together with a post-deprivation hearing at a meaningful time.

64. Officer Wynne possesses a protected interest in his continued employment and in the emoluments of his position, including specialized-unit pay, overtime, promotional eligibility, and accruing seniority and pension benefits, of which Defendants have deprived him through the indefinite suspension and the refusal to adjudicate the charges. The Due Process Clause requires that any such deprivation be accompanied by a hearing at a meaningful time.

65. Defendants Worley and Nadeau, acting under color of state law, deprived Officer Wynne of these interests without the timely and impartial process to which he is entitled, imposing the practical consequences of discipline — lost pay, lost advancement, and exclusion from his profession — without ever adjudicating the charges that purportedly justify them.

66. The post-deprivation process BPD has provided is constitutionally inadequate: despite Officer Wynne's timely request, BPD has provided no hearing at all and has instead allowed the deprivation to continue indefinitely.

67. As a direct and proximate result, Officer Wynne suffered the injuries described above. The individual Defendants' conduct was willful and malicious, warranting punitive damages against the individual Defendants.

**COUNT IV: Municipal Liability — 42 U.S.C. § 1983 (Baltimore Police Department)**

68. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

69. A municipality is liable under § 1983 when the execution of its policy or custom, or a decision by an official with final policymaking authority over the subject matter, causes a constitutional deprivation; it may not be held liable on a respondeat superior theory. A municipality is liable under a custom-by-condonation theory where its policymakers, having actual or constructive knowledge of a persistent and widespread pattern of unconstitutional conduct, fail to put a stop to or correct it through deliberate indifference.

70. BPD maintains a custom and practice of failing to adjudicate officer discipline within the time the law requires or any reasonable time, reflected in a backlog of hundreds of officers awaiting trial boards, a rate of only a dozen or fewer trial boards per year, and the findings of the federal monitor and the court overseeing the Consent Decree. BPD's policymakers, including Defendant Worley as the final policymaker for officer discipline and Defendant Nadeau as the final policymaker over the Public Integrity Bureau and the disciplinary process, had actual and constructive knowledge of this pattern and were deliberately indifferent to it. That custom, and

the decisions of those final policymakers, were the moving force behind the violation of Officer Wynne's rights.

71. As a direct and proximate result, Officer Wynne suffered the injuries described above.

**COUNT V: Violation of Article 24 of the Maryland Declaration of Rights (Due Process) (All Defendants)**

72. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

73. Article 24 of the Maryland Declaration of Rights guarantees that no person shall be deprived of life, liberty, or property without due process of law, and Maryland courts construe it in pari materia with the Due Process Clause of the Fourteenth Amendment. Maryland recognizes a common-law action for damages for violations of Article 24, for which public officials enjoy no qualified immunity.

74. For the reasons alleged in Counts I, II, and III, Defendants, acting under color of state law, deprived Officer Wynne of his protected liberty and property interests without due process of law, in violation of Article 24 of the Maryland Declaration of Rights.

75. As a direct and proximate result, Officer Wynne suffered the injuries described above. The individual Defendants' conduct was willful and malicious, warranting punitive damages against the individual Defendants.

**COUNT VI: Violation of the Maryland Police Accountability Act, Md. Code Ann., Pub. Safety § 3-101 et seq. — Declaratory and Injunctive Relief (Baltimore Police Department)**

76. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

77. The Maryland Police Accountability Act requires each law-enforcement agency to establish a trial board process to adjudicate all matters for which a police officer is subject to

discipline, and entitles an officer who declines proposed discipline to such a hearing. An officer who is denied a trial board may seek a writ of mandamus to compel the agency to perform that duty. Mandamus lies to compel a public agency to perform a duty to which the petitioner has a clear legal right and which is imperative, as a summary remedy where there would otherwise be a failure of justice.

78. For more than 1,077 days, BPD has refused to convene the trial board Officer Wynne requested and to which he is entitled, in violation of the Police Accountability Act and the deadlines it imposes. Officer Wynne is entitled to a declaration that Defendants have violated the Act and to an order compelling BPD to convene a trial board promptly or, in the alternative, to lift his suspension and remove the resulting stigmatizing records.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James A. Wynne respectfully requests that this Court enter judgment in his favor and against Defendants and award the following relief:

A. Compensatory damages, including back pay, front pay, and lost benefits, in an amount to be determined at trial;

B. Damages for reputational harm, emotional distress, and mental anguish;

C. Punitive damages against the individual Defendants;

D. A declaration that Defendants' conduct violated Plaintiff's rights under the United States Constitution and the Maryland Declaration of Rights;

E. Injunctive and equitable relief, including an order compelling the Baltimore Police Department to convene Officer Wynne's trial board promptly or, in the alternative, to lift his suspension; removal of Officer Wynne from the State's Attorney's "Do Not Call" list and expungement of the related stigmatizing records; and restoration of Officer Wynne to full duty, specialized assignments, and promotional eligibility, or front pay in lieu thereof;

F. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial on all triable issues of fact raised by this Complaint.

Dated: September 29, 2026

Respectfully submitted
THE PLAINTIFF,

By */s/ Patrick Jennings*

Patrick Jennings, Esq. (30362)
Ment Law Group
225 Asylum Street – 15th Floor
Hartford, CT 06103
pjennings@mentlaw.com

Michael Turiello, Esq. (30383)
Skeen Law Offices
258 E. High Street
Charlottesville, VA 22902
mturiello@skeenlaw.com